# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BARBARA HAMILTON,

        Plaintiff,

   v.

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

CASE NO. 1:09-cv-01427-SMS

ORDER AFFIRMING COMMISSIONER'S DENIAL OF PLAINTIFF'S APPLICATION FOR SUPPLEMENTAL SECURITY INCOME

Plaintiff Barbara Hamilton, proceeding *in forma pauperis*, by her attorney, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record, this Court concludes that the Commissioner's decision was supported by substantial evidence.

I. **Administrative Record**

   A. **Procedural History**

On September 5, 2006, Plaintiff applied for SSI benefits, alleging disability beginning October 1, 2001. AR 11. Her claims were initially denied on March 27, 2007, and upon

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 8 & 9).

1

reconsideration, on July 9, 2007.  AR 11.  On September 4, 2007, Plaintiff filed a timely request for a hearing.  AR 11.   Plaintiff appeared and testified at the hearing on November 14, 2008.  AR 18-36.  On March 23, 2009, Administrative Law Judge Christopher Larsen ("ALJ") determined that Plaintiff was not disabled as defined by the Act.  AR 11-17.  The Appeals Council denied review on June 24, 2009.  AR 3-5.   On August 12, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

### B. Agency Record

**Plaintiff's testimony (AR 21-37).**  Plaintiff (born October 16, 1955) lived with her husband in a mobile home in Sanger, California.  She had experienced chronic back pain since a car accident in 1997.  The pain and numbness in her back and legs had increased since an earlier disability hearing in June 2006.  Plaintiff's physician, Dr. Ong prescribed Darvocet[2] and Neurontin[3] but Plaintiff took only Darvocet because she could not afford Neurontin.

Because of pains shooting down her legs and numbness in her back, she had begun to limit her driving, traveling out of the mountains ( twenty-mile trip) to shop only twice a month, instead of the once or twice weekly shopping trip that she used to make.  Plaintiff could not walk as far as she used to.  She was no longer able to do laundry (apparently at a laundromat) because the associated walking, bending, and lifting caused "so much pain I have to sit down."  She was able to sit for fifteen to thirty minutes and to stand for ten minutes.  She could walk no more than fifty or sixty steps at a time.  She rested four or five hours a day.

Plaintiff was able to sweep, to cook, and to do dishes.  She shopped for groceries with her husband's assistance.  She was able to bathe and dress herself, but needed to sit down to rest after taking a shower.

---

[2]  Darvocet (acetaminophen and propoxyphene) is a narcotic pain reliever used to relieve mild to moderate pain with or without fever.  www.drugs.com/darvocet.html (December 30, 2010).  The Food and Drug Administration removed Darvocet and other medications containing propoxyphene from the U.S. market on November 19, 2010, in response to studies revealing heart side effects in healthy individuals who took the drug as directed.  www.webmd.com/pain-management/news/20101119/darvon-darvocet-banned (December 30, 2010).

[3]  Neurontin (gabapentin) is an anticonvulsant used to control seizures in individuals with epilepsy and to relieve the pain of post-herpetic neuralgia (pain occurring following an attack of shingles).  www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000940 (December 30, 2010).

1    Plaintiff left school after the tenth grade.  She worked briefly at Hancock Fabrics in 1989.
2 She did not work again until she cleaned house and drove for her sister for a month or a month
3 and a half in 2001.  Plaintiff quit that job, finding it to be too hard on her back.
4    Because she could not bend or stand for very long, Plaintiff was certain she could not work
5 eight hours a day, five days a week.  Walking was painful and required something for Plaintiff to
6 hold on to.  Perhaps as a result of aging or taking pain pills, Plaintiff was unable to concentrate a
7 long time.  Plaintiff estimated her constant back pain as four on a one-to-ten scale (one being least
8 amount of pain, and ten requiring a trip to the emergency room).  Plaintiff had treated her back
9 with heat, cold, Darvocet, and physical therapy, but nothing relieved her pain more than briefly.
10 She also addressed her pain by changing position: sitting down if she was standing and
11 experienced numbness or pain, and standing up if she became numb while sitting.
12    **Medical records.**  On March 29, 2006, Plaintiff's physician (unidentified) at Primary Care
13 Consultants, Inc., prescribed physical therapy twice a week for four weeks.  AR 165.  The agency
14 record includes records of physical therapy at Function & Action Physical Therapy, Inc., from
15 March 7, 2006 through January 24, 2007.  AR 166-183.  The initial report noted intermittent
16 lower back pain, rated nine of a one-to-ten scale, for the past two and a half months.  The therapist
17 observed reduced flexibility of "glutes, hamstrings, poriformis, grads, and hip flexors," reduced
18 range of motion, muscle guarding, and tenderness of the sacroiliac joint upon palpation.  Therapy
19 was intended to improve range of movement, flexibility, and pain management.  Plaintiff's
20 occupation was noted as "consultant," requiring driving and desk work.  AR 173.  Her activities
21 included walking and "animals on her ranch."  AR 173.
22    On April 7, 2006, the therapist noted that Plaintiff's left side was sore from working with
23 [her] horse.  By May 3, 2006, the therapist noted progress as evidenced by improved flexibility
24 and decreased tenderness, although Plaintiff still guarded her muscles.  Plaintiff still reported
25 flare-ups of pain in times of stress.  Notes dated November 15, and December 10, 2006, recorded
26 that Plaintiff reported feeling better, with back pain rated two to three on a one-to -ten scale. From
27 December 8, 2006 through January 2007, Plaintiff consistently reported feeling good.  Flexibility
28 was improved; tenderness and muscle guarding were reduced.

3

      On October 12, 2006, Plaintiff saw Kevin J. Wingert, M.D., for lower back pain. AR 158-159. Plaintiff's symptoms included radiation of pain into leg, heaviness of legs when walking, and tingling but not numbness. Walking aggravated the pain; sitting improved it. The pain sometimes interfered with sleep. Plaintiff could only sit or stand for five to seven minutes before experiencing pain. Her blood pressure was elevated.

      Wingert observed that Plaintiff was alert, oriented, and in no distress. She could walk on her heels and toes and do deep knee bends, as well as flex forward to eleven inches from the floor. Her spine, paralumbar, and pinformis areas were all tender. Straight-leg raise was negative.[4] Sensation and deep tendon reflexes were normal.

      Wingert diagnosed low back pain, spinal stenosis, and possible developing hypertension. He recommended that Plaintff reduce her consumption of salt and stop smoking. He prescribed Neurontin and Darvocet.

      On November 28, 2006, as a new Kaiser patient, Plaintiff saw Melchor Ong, M.D., complaining of lower back pain from which she had suffered for ten years. AR 188-193. Plaintiff told Ong that she had lower spine spondylosis and that she had discontinued various prescriptions because of their expense. She reported that she currently was taking no prescription drugs, and requested a refill of blood pressure medication for her husband, who was also a new patient but was unable to see the doctor.

      Ong noted tenderness and pain with motion in Plaintiff's lower back. Ong prescribed refills of gabapentin and Darvocet as well as medications for hypertension and hyperlipidemia. X-rays revealed mild thoracic scoliosis and osteophytosis; lumbar-sacral x-rays showed sclerosis and osteophytosis, mild disc space narrowing at L4-5 with a degenerating disc, grade 1 spondylolisthesis at L5-S1, and spondylosis of L5.

///

///

---

[4] The straight leg raising test is administered during a physical examination to determine whether a patient with low back pain has an underlying herniated disc. The test is positive if the patient experiences pain down the back of the leg when the leg is raised. *Miller v. Astrue*, 2010 WL 4942814 (E.D. Cal. November 30, 2010) (No. 1:09-cv-1257-SKO).

Plaintiff again saw Ong on April 24, 2008, complaining of chronic low back pain. AR 213. She reported that her hip was stiff and painful after "walking for a while." She claimed to tolerate no opiates other than Darvocet and had discontinued gabapentin because of the expense.

**Agency consultant's report.** On March 11, 2007, Steven Stoltz, M.D., prepared a report as an agency consultant. AR 195-199. Straight-leg raising test was negative; there was no direct bony tenderness or obvious kyphoscoliosis.[5] All ranges of motion were within normal limits. Stoltz offered this opinion of Plaintiff's functional capacity:

> The claimant's sole medical issue centers around her ongoing back pain. Her recent radiographic report from Kaiser referred to degenerative disk disease and a Grade 1 spondylolisthesis at L5 on S1.
>
> The claimant could lift and carry 10 pounds occasionally and 5-9 pounds frequently. Sitting would be six hours in an eight hour work day with allowance for change in position every 30 minutes. Standing and/or walking would be at least two hours in an eight hour work day with allowance for a rest break every hour. The claimant does not require the use of an assistive device. She could only occasionally do activities such as stooping and crouching. No other environmental restrictions.

AR 199.

**Agency RFC analysis.** On March 16, 2007, agency medical consultant E.A. Fonte determined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; could stand or walk for six hours in an eight-hour day; could sit six hours in an eight-hour day; had unlimited ability to push or pull; and could occasionally climb, balance stoop, kneel, crouch, and crawl. AR 200-204.

**Vocational expert testimony (AR 37-46).** Vocational expert Judith Najarian testified regarding jobs available to hypothetical individuals with various disabilities. For the first hypothetical, the ALJ directed Najarian to assume a worker of Plaintiff's age, education, and work experience, capable of light physical exertion except that she needed to be allowed to sit or stand at will throughout the work day and that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. Najarian noted that finding appropriate positions for such a person would be difficult since, although many light jobs allowed for sitting, few jobs allowed for sitting or

---

[5] Kyphoscoliosis is an abnormal front-to-back curvature of the spine, giving a rounded-back appearance. www.nlm.nih.gov/medlineplus/ency/article/001241.htm (December 30, 2010).

standing at will, and many required more than occasional bending or stooping. For example, although a light delivery job allowed for sitting and standing, the sitting and standing was not at will but was dependent on the need to drive and deliver to specific destinations. Certain cashier positions, such as those in a gas station booth, were light positions that allowed the employee to sit or stand. Light positions for which numerous jobs were available included light delivery (20,823 jobs in California), light cashiering (28,486 in California after reduction to eliminate jobs without available seating), vending machine attendant (5,727 jobs in California).

For the second hypothetical worker, the ALJ directed Najarian to remove the need for sitting or standing at will, and consider an individual capable of light physical exertion who could occasionally climb, balance, stoop, kneel, crouch, and crawl. In that case, opined Najarian, 870,348 light unskilled positions were available in California after eliminating those that required frequent climbing, balancing, stooping, kneeling, crouching, and crawling.

The third hypothetical worker posited by the ALJ required at least one hour in unscheduled breaks in addition to the customary two breaks and lunch break. Najarian responded that no such jobs were available.

Plaintiff's attorney then directed Najarian to consider an individual the same age as Plaintiff who could lift and carry ten pounds occasionally, five to nine pounds frequently; could sit for a total of six hours with a change of position every thirty minutes; could stand or walk at least two hours in an eight-hour day with rest breaks every hour; did not require an assistive device; and could occasionally stoop or crouch. The attorney was unable to define the extent of the required hourly rest break. Najarian responded that, if the required hourly break was tantamount to a simple change of position, then the individual could perform positions at the sedentary level. No jobs would be available, however, if the hypothetical individual required longer hourly breaks.

**II.    Discussion**

    **A.    Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.

6

42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one:   Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:   Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 5, 2006. AR 13. Plaintiff's severe impairments were degenerative disc disease, hypertension, and hyperlipidemia. AR 13. Her impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P. Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 13-14. Plaintiff had no past relevant work. AR 15. Although the ALJ found that Plaintiff's medically determined impairments could reasonably be expected to produce her alleged symptoms, he questioned the credibility of Plaintiff's testimony about their intensity, persistence and limitations. AR 14. Plaintiff had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; to sit, or to stand and walk, a total of six hours in an eight-hour workday. AR 14. Plaintiff required a position that

would allow her to sit and stand at will, but would not require her to stand for more than half of the day.  She could bend and stoop no more than half of the day.

### B.　　Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007);  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*internal citation and quotation marks omitted*).

### C.　　Discussion

Arguing that Najarian consistently testified that, if Plaintiff required a position that permitted her to sit or stand at will, Plaintiff was limited to sedentary positions, Plaintiff contends that the ALJ's finding that she required a position that allowed her to sit and stand at will was

inconsistent with his conclusion that she was capable of light work.  The focus of her argument is that, if the "grids" (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.09) are applied, given her age and limited education, she is presumed disabled if she is limited to sedentary work but not if she is able to perform light work (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.10).  The Commissioner disagrees with Plaintiff's characterization of the ALJ's decision, contending that the ALJ properly articulated his findings supporting his conclusion that Plaintiff was capable of light work subject to nonexertional limitations, including the option to sit or stand at will.  Having reviewed the record as a whole, as well as the ALJ's decision, the Court finds no inconsistency in the ALJ's decision that would require reversal of the Commissioner's decision.

In subpart 4 of his decision, the ALJ determined Plaintiff's residual functional capacity:

> After careful consideration of the entire record, I find Mrs. Hamilton has the residual functional capacity to lift and carry 20 pounds occasionally, and 10 pounds frequently; and to sit, or stand and walk, a total of 6 hours in an 8 hour work day. ***She must be allowed to sit and stand at will,*** although she will not need to stand more than half the day; and she can bend and stoop no more than half the day (20 C.F.R. 416.967(b)).

AR 14.

In his discussion of subpart 4, the ALJ discussed the evidence on which he relied in reaching his conclusion, but did not mention in any way Plaintiff's need to sit or stand at will.  He separately analyzed the availability of jobs that Plaintiff could perform:

> **9.    Ms. Hamilton's age, education, work experience, and residual functional capacity allow her to perform jobs that exist in significant numbers in the national economy (20 CFR 416.969 and 416.969a).**
>
> To decide if she can adjust successfully to other work, I must consider Ms. Hamilton's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  The Medical-Vocational Guidelines set forth a series of rules that may direct a finding of "disabled" or "not disabled," depending on the claimant's residual functional capacity and vocational profile (SSR 83-11).  The Guidelines control when the claimant is capable of the full range of work at one of the regulatory levels of exertion, "sedentary," "light," "medium," and "heavy."  Where the claimant is capable of some, but not substantially all, work at one of the regulatory levels of exertion, I must nevertheless refer to the Guidelines and use them as a framework for decision (SSR 85-15).
>
> If Ms. Hamilton could perform the full range of light work, she would be "not disabled," as a matter of administrative law, under Medical-Vocational Rule 202.10.  Because she cannot perform the full range of light work, I must decide whether she can nevertheless perform a significant number of jobs.  To decide that

9

> question, I heard testimony from the vocational expert, Ms. Najarian. She testified a person of Ms. Hamilton's age, education, work experience, and residual functional capacity can perform any of about 20,823 California jobs in the category of light delivery, including, for example, DOT 230.663-010; any of about 28,486 California jobs in the category of cashier, including, for example, DOT 211.462-010; and any of about 28,486 California jobs in the category of cashier, including, for example, DOT 211.462-010; and any of about 5,727 California jobs in the category of vending machine attendant, including, for example, DOT 319.464-014. In each case, according to Ms. Najarian, there are about 9 times as many jobs nationwide as in California alone.
>
> Pursuant to SSR 00-4p, Ms. Najarian's testimony is consistent with the Dictionary of Occupational Titles.
>
> Relying on Ms. Najarian's testimony, I conclude Ms. Hamilton, given her age, education, work experience, and residual functional capacity, can adjust successfully to other work that exists in significant numbers in the national economy. Under the framework of Medical-Vocational Rule 202.10, she is accordingly "not disabled."

AR 16.

Because Plaintiff's disability had additional nonexertional components, consisting of her need to sit and stand at will, and limitations on the frequency of bending and stooping, the grids could not appropriately be used alone to determine whether Plaintiff was disabled for purposes of the Act. S.S.R. 85-15 at *2 (1985). The ALJ appropriately secured the testimony of a vocational consultant to determine the effect of Plaintiff's nonexertional limitations on her capability to work. *Id.* at *3.

The ALJ's determination in subpart 9 is factually supported by Najarian's final response to the first hypothetical, which directed Najarian to assume a worker of Plaintiff's age, education, and work experience, capable of light physical exertion except that she needed to be allowed to sit or stand at will throughout the work day and that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. Plaintiff is correct that Najarian repeatedly attempted to resolve the requirement that Plaintiff be allowed to sit and stand at will by reducing the exertion level to sedentary, since an individual performing sedentary jobs would have the ability to sit at any time. *See* AR 38-41. The ALJ, however, repeatedly, re-directed Najarian to his hypothetical, which addressed a person capable of light exertion. *See* AR 38-41. Ultimately, Najarian responded that light jobs that permitted sitting and standing at will were available, but that the total numbers of such positions had to be reduced from the numbers available to an individual capable of light

work without a sit-stand option.  AR 41-42.  Thus, Najarian's testimony supported the ALJ's final determination.  Contrary to Plaintiff's contention, the ALJ's finding that Plaintiff required positions that permitted her to sit and stand at will is not inconsistent with his finding that she was also capable of performing jobs requiring light exertion.

### III.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:     January 5, 2011**                              /s/ Sandra M. Snyder
                                                         UNITED STATES MAGISTRATE JUDGE